1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF TEXAS

3                    PECOS DIVISION

4
   UNITED STATES OF AMERICA,      )      P-05-CR-234
5              Government,        )
                                  )
6                                 )
   VS.                            )      PECOS, TEXAS
7                                 )
                                  )
8  JOSE AGUIRRE-ESTRADA,          )
               Defendant.         )      March 21, 2006
9

10          TRANSCRIPT OF JURY TRIAL VOLUME 2

11        BEFORE THE HONORABLE ROBERT JUNELL

12            UNITED STATES DISTRICT JUDGE

13

14  A P P E A R A N C E S:

15

16  FOR THE GOVERNMENT:        MR. JAMES J. MILLER, JR.
                               Assistant United States Attorney
17                             2500 N. Highway 118, Suite A-200
                               Alpine, Texas  79830
18                             (432) 837-7332

19
   FOR THE DEFENDANT:          MS. LIZ ROGERS
20                             Federal Public Defender's Office
                               108 N. 10th Street
21                             Alpine, Texas  79830
                               (432) 837-5598

22

23                             MS. CHARLOTTE ALINE HARRIS
                               Federal Public Defender's Office
24                             108 N. 10th Street
                               Alpine, Texas  79830
25                             (432) 837-5598

1   COURT REPORTER:                MR. TODD ANDERSON, RMR, CRR
                                   United States Court Reporter
2                                  1100 Commerce St., Rm. 1625
                                   Dallas, Texas  75242
3                                  (214) 753-2170

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
            The above-styled and numbered cause was reported by
23   mechanical stenography and produced by computer.

24

25

INDEX

Objections to the Court's Charge........................... 4

Jury Instructions read................................ 16,52

CLOSING STATEMENT:  Mr. Miller........................ 28,46

CLOSING STATEMENT:  Ms. Rogers........................... 35

Verdict.................................................. 58


DEFENDANT'S EXHIBIT                                Received

    2    Documents contained in the A-File            45

1          (March 21, 2006)

2          (Defendant present)

3          THE COURT:  It's 10:00.  We are outside the presence

4     of the jury.

5          Mr. Miller is here for the Government.  Ms. Harris,

6     Ms. Rogers are here.  And Mr. Aguirre is here.

7          The parties worked last night as well as this morning

8     on the Court's proposed instructions to the jury.  And I have

9     delivered to the parties a copy of the proposed charge.

10          And down in the bottom left-hand corner of the first

11     page it should say March 21, 2006, at 9:10 a.m., is the latest

12     copy.

13          Mr. Miller, does the Government have any objections

14     to the Court's charge?

15          MR. MILLER:  No Your Honor.

16          THE COURT:  And, Ms. Rogers, does the -- or,

17     Ms. Harris, does the Defendant have any objections to the

18     charge?

19          MS. HARRIS:  Yes, Your Honor.

20          We would object on page 6 to the instruction on

21     similar acts in keeping with our objection that that evidence

22     should not come in at the trial.

23          THE COURT:  All right.  I find this has to do with

24     the trial of Mr. Aguirre-Estrada in the United States District

25     Court for the Middle District of Louisiana in which he was

1  convicted in 1999 for illegal entry after deportation.

2      As I stated on the record, the Government did not

3  offer this on the issue of collateral estoppel, which there is

4  some law in other circuits about once someone has been

5  convicted of being able to raise the issue of citizenship,

6  which is the defense in this case.

7      And so it is not being offered for that part.  It is

8  offered -- since the Defendant has pled guilty under 404(b),

9  the Court finds that the evidence is relevant.  It does have

10  prejudice.  It's exactly the same -- legally the same case, not

11  factually the same case, but legally the same case as before

12  this Court and factually to the extent that Mr. Estrada was

13  found -- I mean Mr. Aguirre was found in the United States

14  after previously having been deported.

15      The Court finds that the evidence was not cumulative

16  and it is prejudicial, but the Court finds that the probative

17  value does outweigh the prejudice.

18      I did instruct the jury that it was limited -- that

19  that evidence was not offered to prove that -- in deciding --

20  the jury could not consider this evidence in deciding whether

21  or not the Defendant committed the acts charged in the

22  indictment, illegal reentry, but it is considered for a very

23  limited purpose, that being to the intent of the Defendant and

24  to his knowledge necessary to commit the crime charged in the

25  indictment.

 1          I did instruct them at the time and I instruct them

 2  again in the charge.

 3          I find that it was -- that the probative value does

 4  outweigh the prejudice, and I respectfully overrule the

 5  Defendant's objection both to the evidence as well as the

 6  instruction.

 7          MS. HARRIS:  Yes, Your Honor.

 8          THE COURT:  Anything else?

 9          MS. HARRIS:  Yes, sir.

10          And I just want to, on that last objection, make it

11  clear that my trial objection and my objection today is

12  cumulative and Rule 403 as the Court stated in its reasons for

13  overruling it.

14          In addition, Your Honor, we object that we wish the

15  Court to include a longer definition of alienage as presented

16  in our written jury instruction.  And we also requested, as

17  discussed in chambers, a theory of defense instruction.  And we

18  have provided this morning a written instruction.

19          THE COURT:  And is the instruction similar to the one

20  you had previously given me?

21          MS. HARRIS:  No, sir.

22          THE CLERK:  I gave it to Cory.

23          THE COURT:  Do you have a copy?  We need to make sure

24  it's filed.

25          THE CLERK:  It is.  I gave it to Cory.

1          THE COURT:  Off the record here for a second.

2          (Discussion off the record)

3          THE COURT:  All right.  We're back on the record.

4          The Defendants have provided and was filed this

5   morning that the proposed -- that the following instruction be

6   given to the jury:

7          "Defense theory of the case.  The Defendant has

8   presented evidence that he's a citizen of the United States.

9   Unless you find beyond a reasonable doubt that he is an alien,

10  you must acquit."

11         And then the request for alienage.  The requested

12  instruction is that, "Any person born within the borders of the

13  United States is a citizen of the United States at birth

14  regardless of the citizenship of the person's parents."

15         And prosecution for illegal entry.  "The Government

16  has the burden of proving beyond a reasonable doubt that

17  Mr. Aguirre-Estrada is an alien, thus the Government must

18  affirmatively prove beyond a reasonable doubt that Mr. Estrada

19  was born outside of the United States.  Mr. Estrada --

20  Mr. Aguirre-Estrada has presented some evidence of birth in the

21  United States; however, it is not Mr. Aguirre-Estrada's burden

22  to prove that he was born in the United States.  In other

23  words, you do not have to be convinced or even believe

24  Mr. Aguirre-Estrada is a citizen in order for you to return a

25  verdict of not guilty.  At all times it remains the burden of

1  the Government to prove beyond a reasonable doubt that

2  Mr. Aguirre-Estrada is an alien.  At the close of this case

3  if -- if at the close of the case you harbor a reasonable doubt

4  as to whether Mr. Aguirre is born in the United States and the

5  Government has failed to meet its burden of proof, you must

6  return a verdict of not guilty."

7          The Court's charge does have a -- the one the Court

8  has proposed does have on page 2 an instruction taken from the

9  pattern jury charge, burden of proof, which does state the

10 burden of proof is on the Government beyond a reasonable doubt.

11          In addition, the Court's charge does contain on page

12 9 the explanation of counts.

13          As to misrepresentation of citizenship, on Count One,

14 the charge states, "For you to find the Defendant guilty of

15 this crime, you must be convinced that the Defendant" -- excuse

16 me -- "that the Government has proved each of the following

17 beyond a reasonable doubt:

18          "First:  That the Defendant stated that he was a

19 citizen of the United States;

20          "Second:  That the Defendant was not a citizen of the

21 United States at that time; and

22          "Third:  That the Defendant knew he was not a citizen

23 and deliberately made this false statement with intent to

24 disobey or disregard the law."

25          Then as to Count Two, illegal reentry following

 1    deportation -- and both of these explanations are taken from

 2    the pattern -- Fifth Circuit pattern jury charge -- the --

 3    under Count Two, the explanation of counts, "Title 8, United

 4    States Code, Section 3126(a) makes it a crime for an alien to

 5    enter or to be found within the United States without consent

 6    of the Attorney General or the Secretary of the Department of

 7    Homeland Security to apply for readmission after being

 8    deported.

 9          "For you to find the Defendant guilty of this crime,

10    you must be convinced that the Government has proved each of

11    the following beyond a reasonable doubt:

12          "First:  That the Defendant was an alien at the time

13    alleged in the indictment."

14          And it has three others -- second, third, and fourth,

15    which really aren't pertinent to the issue I think raised by

16    the Defendants.

17          After that, and contained in a note to the pattern

18    jury charge for illegal reentry following deportation, there is

19    a note in the pattern jury charge that suggests that if the --

20    or states that if the issue is if the Defendant is -- claims

21    that he is a United States citizen, that the Court should take

22    that portion either of the Fourteenth Amendment to the

23    Constitution or under 8 U.S.C., Section 1401, I believe --

24          MS. HARRIS:  Sounds corrects.

25          THE COURT:  -- is the correct section.  And I think

1    that's the correct section.

2          The only definition that applied -- because it also

3    had other -- if you were born in the Aleutian Islands and you

4    had other things which doesn't apply to the facts of the case

5    and the Defendant doesn't allege in this case.  The first one

6    that applied was the first one, that a person born in the

7    United States of America is a United States citizen.

8          I have stated that under the citizenship.  I don't

9    mind -- I think I correctly stated the law.  I want to go back

10   to the theory of the case.

11         I understand about the judge can't comment on the

12   evidence.  I have declined to do so in this case and other

13   cases and follow kind of the strict -- such strict dictates of

14   the pattern jury charges in those cases where the parties can

15   find case law that say that.  I did read the two cases

16   presented by the Defendants on the theory of the case.

17         In the Supreme Court case, which is -- I don't

18   remember the title -- it has to do with entrapment defense.

19         MS. HARRIS:  Yes, sir.

20         THE COURT:  And in that case, as I read the Supreme

21   Court of the United States in writing that case, a defendant

22   had pled not guilty but he also wanted presented that he was

23   entrapped, which seemed to be inconsistent positions.  The

24   Supreme Court said no, the Defendant was entitled to present in

25   quotes the theory of his case, that being the entrapment

1    defense.

2          In United States versus Ther-Mall, Inc., which, as I

3    recall, was a restraint of trade or antitrust case, there was a

4    discussion.  And the other case was Matthews versus United

5    States, which is a Supreme Court case, which said, yes, a

6    defendant was entitled to have his theory of the case, that

7    being the instructions on entrapment.  The theory of the case,

8    though, does not necessarily mean that you lay out all of the

9    ways that the defense could be found -- the Defendant could be

10   found not guilty.

11         Going back to United States versus Ther-Mall, Inc.,

12   T-H-E-R--M-A-L-L, I-N-C., 373 F.3d 625, Fifth Circuit, 2004, in

13   that case, as I recall the issue was something to do with a

14   defense of restraint of trade or whether or not that was even

15   in the charge.  And I think it's competitive pricing, was the

16   issue.

17         MS. HARRIS:  Yes, sir.

18         THE COURT:  And so the -- and as I recall in the

19   Ther-Mall case, it was affirmed -- it was affirmed.  And there

20   is just kind of a general statement where they request an

21   instruction on the theory of defense is whereby some evidence

22   is reversible error not to adequately present the theory to the

23   jury.

24         In this case the issue is, from the defense's

25   standpoint, was he a citizen or not a citizen.  I think I --

1    the jury has done that.  I have placed an instruction.

2           I think that to clarify this, on the question of the

3    citizenship that is shown on page 10 that I could add the words

4    "You are instructed a person born in the United States of

5    America is a United States citizen regardless of whether or not

6    his parents are United States citizens."  And I think that's

7    consistent with the testimony we've heard.  And I think that's

8    the correct statement of the law.

9           Mr. Miller, what's the Government's position?

10          MR. MILLER:  I think the -- I think it's very clear,

11   that one sentence.  As a matter of fact, the defense theory is

12   basically the very first element the Government has got to

13   prove in Count Two.  We have to prove -- we have the burden to

14   prove that he was an alien.  The assumption right now is he is

15   a United States citizen, and we have to prove that he's an

16   alien and has no rights to be here.

17          I think it's not only redundant, but I think adding

18   any more than what has already been provided is an unfair

19   advantage [sic] to the Government.

20          The theory of the case is --

21          THE COURT:  Unfair advantage to the Government?

22          MR. MILLER:  In the sense that it's adding --

23          THE COURT:  Advantage or disadvantage?

24          MR. MILLER:  Disadvantage.  Pardon me.  Did I say

25   advantage?

1          THE COURT:  Yeah.

2          MR. MILLER:  But, Your Honor, the element of the

3   offense the Government has to prove, the very first element of

4   Count Two is that the Defendant was an alien at the time of the

5   indictment.

6          It's already presented to the jury.  The Government

7   has the burden to show that he was an alien.  The assumption

8   right now, he's innocent, that he is not -- right now he's not

9   committed any of these elements of any of the offenses.

10          THE COURT:  Yeah, I guess -- I don't disagree with

11   what you're saying, Mr. Miller.  My only point is, is that --

12   well, I'm going to leave it the way it is.  I'm going to leave

13   citizenship.  That is a correct statement of the law.  I

14   believe I have submitted correctly the Defendant's theory of

15   the case.

16          The problem is you get into a -- start writing on

17   what everybody is editorializing within that, then I need to

18   submit -- you know, what do I need to submit to the Government.

19          There is some law.  It is not raised, not requested

20   by the Government, that there is a presumption that he was not

21   a United States citizen up until October of 19 -- whatever that

22   date he pled guilty.  So whatever happened, happened after

23   that.  There is some law after that.

24          MS. ROGERS:  He didn't plead guilty.  He was found

25   guilty.

1          THE COURT:  Pled or found, either one.

2          It goes -- if you read the annotations to 8 U.S.C.,

3   Section 1326, there's a number of cases that talk about a

4   presumption.  The Government has not pled that or requested

5   that, and I'm not going to give it at this point in the trial.

6          But anything else, Ms. Harris?  I overrule your

7   objection.  And it is filed.

8          MS. HARRIS:  No, Your Honor.  Thank you very much.

9          THE COURT:  And let me say this.  In reading the

10  annotations to 1326, as well as to the 18 U.S.C., Section 911,

11  it doesn't appear to me there's been a lot -- at least if the

12  cases are there, they are not in the annotations as far as

13  instructions and jury issues and things like that.  It did

14  not -- and I think -- I think -- if y'all had found something,

15  you would have cited something else other than anti-

16  competitive case and the entrapment case, if you had found

17  something.

18          I think if the Government had found something, they

19  certainly would have shared that.

20          And there are no other issues?

21          MS. HARRIS:  No, Your Honor.  And I don't think a lot

22  of these cases get tried.  We have had this issue several times

23  and resolved them prior to trial.

24          THE COURT:  Maybe this will be an opportunity for the

25  Fifth Circuit to write on it.

1          All right.  Do we have all of our jurors?

2          SECURITY OFFICER:  Yes, sir.

3          THE COURT:  Just for the -- we are going to give 30

4    minutes a side.

5          Mr. Miller wants yours divided how?  20 and 10?  15

6    and 15?

7          MR. MILLER:  15 and 15.

8          THE COURT:  You have a two-minute warning.

9          MR. MILLER:  Yes, sir.

10         THE COURT:  And, Ms. Rogers, you are going to argue

11   all the case for the Defendant?

12         MS. ROGERS:  Yes, sir.

13         THE COURT:  And have y'all gone through the exhibits,

14   and we have got all the exhibits?

15         MS. ROGERS:  We have.

16         MR. MILLER:  We have, Your Honor.

17         THE COURT:  All right.  Well, let's all rise for the

18   jury.

19         (Jury in)

20         THE COURT:  Please be seated.

21         Good morning.  It is 10:20.  We're in the courtroom

22   with the jury.

23         And Mr. Miller is present, and Ms. Rogers and

24   Ms. Harris are present, and Mr. Aguirre Estrada is present.

25         In your seats you found a copy of the Court's

1   instructions to the jury or the Court's charge.

2         And the procedure we'll use this morning is we will

3   go through this together.  I'll read it aloud.  You follow

4   along.  If you want to highlight something on there, feel free

5   to do so.  And I'll go down to about the next-to-last page and

6   then stop.  I will recognize Mr. Miller to make his opening

7   closing argument on behalf of the Government, and then

8   Ms. Rogers on behalf of Mr. Aguirre, and then I will recognize

9   Mr. Miller again to conclude.

10        The Government gets to start the closing argument and

11  end the closing argument because they have the burden of proof

12  beyond a reasonable doubt on all issues contained here or that

13  were charged by them in their indictment.

14        So if you will follow along with me.

15        "United States of America versus Jose

16  Aguirre-Estrada.

17        "Court's Instructions to the Jury.

18        "Members of the Jury:

19        "In any jury trial there are, in effect, two judges.

20  I am one of the judges; you, the jury, are the other judge.  It

21  is my duty to preside over the trial and to decide what

22  evidence is proper for your consideration.  I have completed

23  that responsibility.  It is also my duty now, at the end of the

24  trial, to explain to you the rules of law that you must follow

25  and apply in arriving at your verdict.  As I have said, you are

1    the other judge -- the judge of the facts.  It will be your

2    duty to find from the evidence what the facts are.

3              "General and Specific Instructions.

4              "In performing my second duty to explain the rules of

5    law, I will first give you some general instructions which

6    apply in every case, such as instructions about burden of proof

7    and how to judge the believability of witnesses.  Then I will

8    give you some specific rules of law about this particular case,

9    and finally I will explain to you the procedures you should

10   follow in your deliberations.

11             "Duty to Follow Instructions.

12             "As I mentioned before, you, as jurors, are the judge

13   of the facts.  But in determining what actually happened --

14   that is, in reaching your decision as to the facts -- it is

15   your sworn duty to follow all of the rules of law as I explain

16   them to you.

17             "You have no right to disregard or give special

18   attention to any one instruction, or to question the wisdom or

19   correctness of any rule I may state to you.  You must not

20   substitute or follow your own notion or opinion as to what the

21   law is or ought to be.  It is your duty to apply the law as I

22   explain it to you, regardless of the consequences.

23             "It is also your duty to base your verdict solely

24   upon the evidence, without prejudice or sympathy.  You are to

25   decide this case only on the evidence which has been admitted

1    into court during trial.  That was the promise you made and the

2    oath you took before being accepted by the parties as jurors,

3    and they have the right to expect nothing less.

4              "Presumption of Innocence.

5              "The Defendant has been charged by the Government

6    with violations of federal law.  The indictment or formal

7    charge against the Defendant is not evidence of guilt.  Indeed,

8    the Defendant is presumed by the law to be innocent.  The law

9    does not require the Defendant to prove his innocence or

10   produce any evidence at all.

11             "And no inference whatever may be drawn from the

12   election of the Defendant not to testify.

13             "Burden of Proof.

14             "The Government has the burden of proving the

15   Defendant guilty beyond a reasonable doubt, and if it fails to

16   do so, you must acquit the Defendant.

17             "Thus, while the Government's burden of proof is a

18   strict or heavy burden, it is not necessary that the

19   Defendant's guilt be proved beyond all possible doubt.  It is

20   only required that the Government's proof exclude any

21   'reasonable doubt' concerning the Defendant's guilt.

22             "A 'reasonable doubt' is a doubt based upon reason

23   and common sense after careful and impartial consideration of

24   all the evidence in the case.  Proof beyond a reasonable doubt,

25   therefore, is proof of such a convincing character that you

1   would be willing to rely and act upon it without hesitation in

2   the most important of your own affairs.

3           "Evidence -- Excluding What is Not Evidence.

4           "As I told you earlier, it is your duty to determine

5   the facts.  Specifically, you must determine whether the

6   Government has proved the allegations in the -- of the

7   indictment beyond a reasonable doubt.  In doing so, you must

8   consider only the evidence presented during the trial,

9   including the sworn testimony of the witnesses and the

10  exhibits.

11          "Remember that any statements, objections, or

12  arguments made by the lawyers are not evidence.  The function

13  of the lawyers is to point out those things that are most

14  significant or most helpful to their side of the case, and in

15  so doing to call your attention to certain facts or inferences

16  that might otherwise escape your notice.  In the final

17  analysis, however, it is your own recollection and

18  interpretation of the evidence that controls in the case.  What

19  the lawyers say is not binding upon you.

20          "During the trial I sustained objections to certain

21  questions.  You must disregard those questions entirely.  Do

22  not speculate as to what the witness would have said if

23  permitted to answer the question.  Also, do not consider any

24  testimony or other evidence which may have been stricken from

25  the record in reaching your decision.  Your verdict must be

1   based solely on the legally admissible evidence and testimony.

2          "Also, do not assume from anything I may have done or

3   said during the trial that I have any opinion concerning any of

4   the issues in this case.  Except for the instructions to you on

5   the law, you should disregard anything I may have said during

6   the trial in arriving at your own findings as to the facts.

7          "Evidence -- Inferences -- Direct and Circumstantial.

8          "While you should consider only the evidence, you are

9   permitted to draw such reasonable inferences from the testimony

10  and exhibits as you feel are justified in the light of common

11  experience.  In other words, you may make deductions and reach

12  conclusions that reason and common sense lead you to draw from

13  the facts which have been established by the evidence.

14         "You should not be concerned about whether the

15  evidence is direct or circumstantial.  'Direct evidence' is the

16  testimony of one who asserts actual knowledge of a fact, such

17  as an eyewitness.  'Circumstantial evidence' is proof of a

18  chain of events and circumstances indicating that something is

19  or is not a fact.  The law makes no distinction between the

20  weight you may give to either direct or circumstantial

21  evidence.

22         "Impeachment by Prior Inconsistencies.

23         "The testimony of a witness may be discredited by

24  showing that the witness testified falsely concerning a

25  material matter, or by evidence that at some other time the

1    witness said or did something, or failed to say or do

2    something, which is inconsistent with the testimony the witness

3    gave at this trial.

4            "Earlier statements of a witness were not admitted in

5    evidence to prove that the contents of those statements are

6    true.  You may consider the earlier statements only to

7    determine whether you think they are consistent or inconsistent

8    with the trial testimony of the witness and therefore whether

9    they affect the credibility of that witness.

10           "If you believe that a witness has been discredited

11   in this manner, it is your exclusive right to give the

12   testimony of that witness whatever weight you think it

13   deserves.

14           "Credibility of Witnesses.

15           "I remind you that it is your job to decide whether

16   the Government has proved the guilt of the Defendant beyond a

17   reasonable doubt.  In doing so, you must consider all of the

18   evidence.  This does not mean, however, that you must accept

19   all of the evidence as true or accurate.

20           "You are the sole judges of the credibility or

21   'believability' of each witness and the weight to be given each

22   witness's testimony.  An important part of your job will be

23   making judgments about the testimony of the witnesses who

24   testified in this case.  You should decide whether you believe

25   what each person had to say, and how important that testimony

1  was.

2       "In making that decision, I suggest that you ask

3  yourself a few questions:  Did the person impress you as

4  honest?  Did the witness have any particular reason not to tell

5  the truth?  Did the witness have a personal interest in the

6  outcome of the case?  Did the witness have any relationship

7  with either the Government or the defense?  Did the witness

8  seem to have a good memory?  Did the witness clearly see or

9  hear the things about which he or she testified?  Did the

10  witness have the opportunity and ability to understand the

11  questions clearly and answer them directly?  Did the witness's

12  testimony differ from the testimony of other witnesses?  These

13  are a few considerations that will help you determine the

14  accuracy of what each witness said.

15       "Your job is to think about the testimony of each

16  witness you have heard and decide how much you believe of what

17  each witness had to say.  In making up your mind and reaching a

18  verdict, do not make any decisions simply because there were

19  more witnesses on one side than on the other.  Do not reach a

20  conclusion on a particular point just because there were more

21  witnesses testifying for one side on that point.

22       "Expert Witness.

23       "During the trial you heard the testimony of John

24  Prewit, who has expressed opinions concerning fingerprint

25  analysis.  If scientific, technical, or other specialized

1    knowledge might assist the jury in understanding the evidence

2    or in determining a fact in issue, a witness qualified by

3    knowledge, skill, experience, training, or education may

4    testify and state an opinion concerning such matters.

5            "Merely because such a witness has expressed an

6    opinion does not mean, however, that you must accept the

7    opinion.  You should judge such testimony like any other

8    testimony.  You may accept it or reject it, and give it as much

9    weight as you think it deserves, considering the witness's

10   education and experience, the soundness of the reasons given

11   for the opinion, and all other evidence in the case.

12           "Similar Acts.

13           "You have heard evidence of a similar act of

14   Defendant Aguirre-Estrada which may be similar to that charged

15   in the indictment, but which was committed on another occasion.

16   Specifically, you heard that Defendant Aguirre-Estrada was

17   convicted in 1999 for illegal entry after deportation.  You

18   must not consider this evidence in deciding if the Defendant

19   committed the acts charged in the indictment.  However, you may

20   consider this evidence for other, very limited, purposes.

21           "If you find beyond a reasonable doubt from other

22   evidence in this case that the Defendant did commit the acts

23   charged in the indictment, then you may consider evidence of

24   the similar act allegedly committed on another occasion to

25   determine:

1            "Whether the Defendant had the intent or knowledge

2    necessary to commit the crime charged in the indictment.

3            "This is the limited purpose for which any evidence

4    of other similar acts may be considered.

5            "Caution -- Consider Only Crimes Charged.

6            "You are here to decide whether the Government has

7    proved beyond a reasonable doubt that the Defendant is guilty

8    of the crimes charged in the indictment.  The Defendant is not

9    on trial for any act, conduct, or offense not alleged in the

10   indictment.  Nor should you be concerned with the guilt of any

11   other person or persons not on trial as a defendant in this

12   case, except as you are otherwise instructed.

13           "Caution -- Punishment Judge's Duty.

14           "If the Defendant is found guilty of the charged

15   offenses, it will be my duty to decide what the punishment will

16   be.  You should not be concerned with punishment in any way.

17   It should not enter your consideration or discussion.

18           "You will note that the indictment charges that the

19   offenses were committed on or about specified dates.  The

20   Government does not have to prove that the crimes were

21   committed on those exact dates, so long as the Government

22   proves beyond a reasonable doubt that the Defendant committed

23   the crimes on dates reasonably near the dates stated in the

24   indictment.

25           "Offenses Charged.

1            "The indictment is a two count indictment, which

2    reads as follows:

3            "Count One.

4            "18 U.S.C., Section 911.

5            "On or about October 27, 2005, in the Western

6    District of Texas, Defendant, Jose Aguirre-Estrada, falsely and

7    willfully did represent himself to be a citizen of the United

8    States.

9            "A violation of Title 18, United States Code, Section

10   911.

11           "Count Two.

12           "8 U.S.C., Section 1326(a) and (b)(2).

13           "On or about October 27, 2005, in the Western

14   District of Texas, Defendant, Jose Aguirre-Estrada, an alien,

15   attempted to enter, entered, or was found in the United States,

16   having previously been denied admission, excluded, deported, or

17   removed therefrom, and the Defendant had not received consent

18   of the Attorney General of the United States or the Secretary

19   of the Department of Homeland Security, the successor for this

20   function pursuant to Title 6, United States Code, Sections

21   202(3), 202(4) and 557, to reapply for admission to the United

22   States, being voluntarily in the United States unlawfully.

23           "A violation of Title 8, United States Code, Sections

24   1326(a) and (b)(2).

25           "Explanation of Counts.

1          "Count One.

2          "Misrepresentation of Citizenship.

3          "18 U.S.C., Section 911.

4          "Title 18, United States Code, Section 911, makes it

5    a crime for anyone falsely or willfully to represent oneself to

6    be a citizen of the United States.

7          "For you to find the Defendant guilty of this crime,

8    you must be convinced that the Government has proved each of

9    the following beyond a reasonable doubt:

10          "First:  That the Defendant stated that he was a

11   citizen of the United States;

12          "Second:  That the Defendant was not a citizen of the

13   United States at that time; and

14          "Third:  That the Defendant knew he was not a citizen

15   and deliberately made this false statement with intent to

16   disobey or disregard the law.

17          "Count Two.

18          "Illegal Reentry Following Deportation.

19          "8 U.S.C., Section 1326(a).

20          "Title 8, United States Code, Section 1326(a), makes

21   it a crime for an alien to enter or to be found within the

22   United States without consent of the Attorney General or the

23   Secretary of the Department of Homeland Security to apply for

24   readmission after being deported.

25          "For you to find the Defendant guilty of this crime,

1    you must be convinced that the Government has proved each of

2    the following beyond a reasonable doubt:

3         "First:  That the Defendant was an alien at the time

4    alleged in the indictment;

5         "Second:  That the Defendant had previously been

6    denied admission, excluded, or removed, or deported from the

7    United States;

8         "Third:  That thereafter the Defendant knowingly

9    entered, attempted to enter, or was found in the United States;

10   and

11        "Fourth:  That the Defendant had not received the

12   consent of the Attorney General of the United States or the

13   Secretary of the Department of Homeland Security to apply for

14   readmission to the United States since the time of the

15   Defendant's previous deportation.

16        "Citizenship.

17        "You are instructed that a person born in the United

18   States of America is a United States citizen.

19        "'Knowingly' -- To Act.

20        "The word 'knowingly,' as that term has been used

21   from time to time in these instructions, means that the act was

22   done voluntarily and intentionally, not because of mistake or

23   accident.  The purpose of adding the term knowingly is to

24   ensure that no one will be convicted for an act done because of

25   a mistake or accident or other innocent reason."

1            All right.  I'm going to stop there.  I'm going to

2     recognize Mr. Miller to make the opening closing statement on

3     behalf of the United States.

4            Mr. Miller?

5            MR. MILLER:  May it please the Court.

6            THE COURT:  Yes, sir.

7            MR. MILLER:  Your Honor, Ms. Rogers, Ms. Harris.

8            Good morning, ladies and gentlemen.

9            I would first like to start off with a timeline to

10    basically look at all the evidence and put it in perspective of

11    how things happened, the history of this case, the history of

12    this defendant's actions.

13           Folks, can you read that?  Blurry?  Is that any

14    better?  Okay.  Any better?

15           What I will do is -- Okay.  Folks, first and

16    foremost, I don't think it's a contested issue that this

17    defendant was born on September 27, 1964.  We have three

18    exhibits.  Government Exhibit 3, 4, and 5 specifically show

19    this defendant was born in Cerocahui, Chihuahua, Mexico.

20           One of those documents, Government Exhibit 3, is the

21    official Government Mexican document showing this defendant was

22    registered and his birth certificate was registered in 1978.

23           Government Exhibit 4 shows that mom and dad

24    registered the Defendant in 1987, on August 5th, 1987.  That's

25    important, because less than a month later, this defendant

1    applied for and received a CR-1 immigration status here in the

2    United States.

3          And what did he have to use to apply for that

4    citizenship status?  He had to use and provide a birth

5    certificate, a Mexican birth certificate.  And that Mexican

6    birth certificate the Defendant provided shows that he was born

7    in Cerocahui, Chihuahua, Mexico, on September 27, 1964, 5:00

8    a.m., just like the other two documents.

9          These documents, ladies and gentlemen, were not made

10   under the pressure of litigation or anything like that, or any

11   burdens of whether or not he was or was not a U.S. citizen.  As

12   a matter of fact, he was applying for status in the United

13   States.

14         On September 1st, it states there the Defendant was

15   granted CR-1 immigration visa.  However, on 7 -- July 11, 1989,

16   for the very first time the Defendant was deported.  And that

17   is Government Exhibit 8.

18         And you are going to look at basically Government

19   Exhibits 8, 9, 10, and 11, the four deportations.  It's going

20   to show the Defendant was arrested, order to show cause.  He

21   was given his warnings about if you ever come back, an

22   immigration judge finding on particular deportations as well as

23   the actual deportation.

24         You heard from John Prewit.  John Prewit came in,

25   testified, said, "I compared the fingerprints that Officer

1   Lujan did on October 27th.  I compared them with every single

2   comparable fingerprint in that A-File.  And without a doubt the

3   person that did the fingerprints that Officer Lujan took is one

4   and the same person, that being the Defendant."

5         Now, after his first deportation, the Defendant comes

6   in contact with Terry Luck, an officer of the court up there in

7   Midland.  And he told Terry Luck that he was born in Mexico.

8         Ladies and gentlemen, the Defendant at this time

9   wasn't a little kid anymore.  He was an adult.  And he

10  specifically told Terry at the age of -- at this time he's 36

11  years old?  26?  26.

12        Then on January 7, 1992, the Defendant's mother

13  applies and is granted immigration visa to the U.S.  That is

14  Government Exhibit 14.

15        Then four months later, the Defendant for a second

16  time is deported from the United States.

17        Then about two and a half years later, the Defendant

18  is deported a third time, in 1994.  He is becoming a veteran of

19  the system.

20        Then on October 9, 1999, the Defendant is convicted

21  in Louisiana for illegal reentry after deportation.  He knew --

22  he had the intent and knowledge that he was illegally in the

23  country.

24        Then between -- we heard Father Sanchez testify.  He

25  was the custodian of the baptismal registry of -- I can't

1    remember -- Our Lady -- the church there in Van Horn that

2    covers basically Sierra Blanca and the surrounding environs.

3            And he stated that -- on direct examination he said,

4    yes, this child, this defendant was baptized, a person named

5    Jose Lopez Aguirre, the first time ever, ever in this history

6    of this defendant.  There is no mention when he applied for

7    immigration visa or his prior deports, prior conviction.  His

8    name was Jose Estrada Aguirre or Aguirre-Estrada.

9            But all of a sudden, after his conviction, there is a

10   new name.  His mother is now going out trying to get him a new

11   name.  It is Jose Lopez Aguirre.  And she goes out sometime

12   between December 16, 2001, and March 31, 2002, if you look at

13   Defendant's Exhibit 7.  The mother then gets a delayed

14   baptismal certificate.

15           Father Sanchez was asked about, "Well, do you have

16   books that go all the way back to 1964?"

17           And he said, "Yes."

18           And there was no notation of a baptism of a Jose

19   Lopez Aguirre on September 27, 1964.

20           On Defendant's Exhibit 9, the mother then gets the

21   delayed baptismal certificate and then applies to the State on

22   or about February 12, 2002, for a delayed birth certificate.

23   And she applies to the State, and she testified that the State

24   denied it.

25           We heard from Freddie -- Redi Franco, pardon me.

1    Redi Franco.  And what did he testify to?  He testified that

2    Indian Hot Springs is in Hudspeth County, not Brewster County.

3    Hudspeth County.

4         And then the mother, after being denied by the State,

5    then goes down to Brewster County, Texas, and submits a birth

6    certificate for a person named Jose Lopez Aguirre.

7         On the 21st of July, 2003, a delayed birth

8    certificate is issued.

9         Then for the fourth time, the Defendant is deported

10   from the U.S. back to Mexico in 2004.

11        You can turn on the lights, please.

12        THE COURT:  Shannon, can you turn the lights on?

13        MR. MILLER:  Thank you.

14        Folks, that brings us to October 27, 2005.  The

15   Defendant enters the port of entry in Presidio, Texas, from

16   Mexico, which is in the Western District of Texas.  He enters

17   and is asked for his citizenship status.  He doesn't make eye

18   contact or keep eye contact when Officer Agure was asking him

19   questions.  He was looking straight forward.

20        He presented him the delayed birth certificate,

21   holding himself out as Jose Lopez Aguirre for the first time in

22   public.  His whole life, 40 years in life, he always held

23   himself out as Jose Estrada or Jose Aguirre.

24        He knew -- he had the intent, the knowledge, that he

25   was going to come into this country.  He was going to come in

1    any way possible even under a delayed birth certificate.

2           Folks, I want you to turn to page 9 and 10 of your

3    instructions, please.

4           Let's look at Count Two, first, the illegal reentry

5    after deportation.  And let's just work backwards.

6           The fourth element said the Defendant had not

7    received the consent of the Attorney General or the Department

8    of Homeland Security to reapply for readmission into the United

9    States.

10          Folks, you're going to have Exhibit Number 12, the

11   certificate of nonexistence, which shows that this defendant,

12   after being deported four times, never sought or requested or

13   reapplied, said, "Hey, I'm a U.S. citizen.  I should be able to

14   come back in."  Never.  Nothing.  Certificate of nonexistence.

15          Folks, he's not new to the system, being deported

16   four times.  He applied for a visa.  He knows the system.

17          Thereafter, the Defendant knowingly entered or was

18   found in the United States.

19          You heard Officer Agure.  Around the noon hour,

20   during shift change, the Defendant entered the checkpoint -- I

21   mean the port of entry.  He was knowingly -- he was driving.

22   He knew he was coming into the United States.

23          Next is the second element.  The Defendant had

24   previously been denied admission, removed, excluded, deported

25   from the United States.

1          You have Government Exhibits 8, 9, 10, and 11.  Those

2   are all four deportations.  It shows he's been arrested, shows

3   he's been deported.  Thumbprint.

4          You heard from Agent Lujan, said, "Hey, when someone

5   is deported, you take them to the bridge, and you see them walk

6   across."  And that verifies.  The officer signs it.  The

7   Defendant -- the deportee puts their thumbprint on it.

8          John Prewit testified, said, "Hey, all those

9   thumbprints on all those 205s match the Defendant's."  He's

10  been deported.

11         Element Number 1.  The Defendant was an alien at the

12  time alleged in the indictment.

13         And if you couple that with Count One, the Defendant

14  stated he was a U.S. citizen.  The Defendant was not a citizen

15  of the United States at the time, and the Defendant knew he was

16  not a citizen and deliberately made his false statement with

17  intent to disobey or disregard the law.

18         Folks, when he handed over this document, he knew --

19  he knew the information on this document wasn't true, because

20  when this document was obtained, it was under a cloud of

21  suspicion.  We submit to you it was surreptitiously obtained.

22         You heard mom say, "Hey, when I got that document,

23  there was no hearing.  I never told them about my son being

24  deported.  I never told them about my son's Mexican birth

25  certificates."  It was one side of the story.

1          THE COURT:  You have two minutes on your opening.

2          MR. MILLER:  Thank you, Your Honor.

3          Government's Exhibit 3, 4, and 5, his application for

4    the initial time to come into the United States.  These were

5    not made under any cloud of suspicion.  These all show that

6    this defendant was born on September 27, 1964, in Cerocahui,

7    Chihuahua, Mexico, at 5:00 a.m.

8          As a matter of fact, one of the documents -- you

9    heard dad testify, Salvador Estrada.  He testified, "Hey, I

10   signed at least one of the birth certificates."

11         If you look at the three birth certificates, there is

12   one with his signature on it.  And when was this issued?

13   Exactly less than one month before the Defendant applied for

14   immigration visa.

15         Why didn't mom go at that time, "Timeout, why are you

16   applying for an immigration visa?  You are a United States

17   citizen"?  Why?  Because she knew he was not a United States

18   citizen; he was not born in the United States.

19         Ladies and gentlemen, the evidence shows in this case

20   that the Defendant is guilty of both charges.

21         Thank you.

22         THE COURT:  Ms. Rogers?

23         MS. ROGERS:  Thank you, Your Honor.

24         Members of the jury, as I get older and I spend time

25   listening to everybody complain about being called to jury

1    duty, I want to start off and thank you.  And I know as our

2    country gets more and more urban, we have less and less

3    community, and it's one of the good things about living in the

4    Big Bend area, is probably no jurors in the nation travel

5    farther to come sit in judgment of people they don't know.  And

6    on behalf of my client and his family, I thank you all for

7    doing that.

8           Now, you're going to -- you've been instructed to

9    reconsider everything you heard, all the witnesses you saw, and

10   all the evidence that's been admitted, and to apply the law

11   that the Judge gives you to the facts as you determine them.

12          And Mr. Miller has just gone through the timeline to

13   show that Mr. Aguirre has been deported, and, of course, that

14   is so.  But what this case falls on, what the Government's case

15   falls on, is Defendant's Exhibit Number 1.  It is

16   uncontroverted that it is a valid Texas birth certificate.  It

17   is uncontroverted.  He did not have that in Louisiana.

18          MR. MILLER:  Objection, Your Honor.

19          THE COURT:  Well, the jury will remember the evidence

20   that came from the trial.  Again, my instructions say you're

21   not bound by what the lawyers say, but it is your recollection

22   of what the evidence is.

23          MS. ROGERS:  You will follow the timeline that

24   Mr. Miller just went through and the convictions in Louisiana

25   in '99.  This is issued in 2002.

1        Now, it's also clear from the Government's witnesses

2   that they don't think he should have this.  They don't want him

3   to have this.  And they don't like it that there is a procedure

4   in the State of Texas for people like Ms. Aguirre to get a

5   delayed birth certificate when they don't have a

6   contemporaneous registration that most of us that live in the

7   middle-class world do have.

8        It is also clear that when faced with two Mexican

9   documents that have variances in them and having to choose one,

10   there's no real answer from the Government about which one is

11   actually correct.  They just say they're there and you need to

12   look at those.

13        I think you would consider even the Mexican documents

14   that are introduced here were very delayed.  There is no

15   contemporaneous registration of his birth.

16        Now, Father Miguel Angel came, and he told you the

17   procedure that the church has to enter a delayed baptismal

18   record.  He wasn't the priest on duty.  He showed the records

19   to show it.  He answered very candidly, he searched them back

20   in '64 and '65 and didn't find them, but he found them in the

21   book that we introduced and put in front of you.

22        And Mr. Miller is going to ask you to say that

23   because -- because this valid -- uncontrovertedly valid Texas

24   birth certificate says Brewster County that you have to convict

25   my client.  And I tell you that's not so.

1          We introduced late yesterday Defendant's Exhibit 9

2    that the sister, Socorro, said she helped her mother fill out

3    and has her mother's signature.  And you can very clearly see

4    that not only does it list Hot Springs, Texas, Hudspeth County,

5    it was notarized by Laurie Whitaker, Hudspeth County.  Hudspeth

6    County.  That underlines they weren't trying to defraud

7    anybody.  They always said he was born in Hot Springs.

8          And I don't have the answer for that.  I think maybe

9    the State of Texas is like the Federal Government when dealing

10   with New Mexico.  They get it confused and think it is Mexico.

11         Indian Hot Springs is not a real community anymore.

12   It's closed.  It's on public land.  And some official down in

13   Texas said maybe we think you have your county wrong and

14   changed it.  But it's issued, and it says Brewster County.  But

15   the document suggests that the family went to Hudspeth County

16   and filled it out correctly.

17         Now, defendants, of course, have no burden to present

18   any evidence.  And maybe some of you yesterday wished we should

19   have stopped at the first.  I think this case could have

20   stopped when the valid birth certificate was presented.  And we

21   spent a lot of time investigating and trying to find out how it

22   came about.

23         And I want to thank my client for his patience in

24   waiting almost five months for us to get to this day in court

25   that is oh so important to him and to any of us if we ever find

1   ourselves accused.

2         I think that if we were writing a television show we

3   couldn't have written it with any more hurdles involved.  And,

4   of course, if I had been involved with the family or if she had

5   had access to somebody to guide her, they would have encouraged

6   her to register the birth certificate at an early age.  They

7   would have encouraged her to not wait and then try to undo what

8   had taken place and the deportations that followed.

9         I think it's also fair to say that if we had a way to

10  test, if we had a way to prove absolutely where he was born,

11  that the Federal Government is not going to change their

12  position.  I mean, they are never going to say they were wrong

13  in deporting him.  It's not going to happen.

14         What is true in this case is the Federal

15  Government -- they just don't do it.  They may take steps to

16  undo or ask the State Government to undo that birth

17  certificate, but that is not before you.  And what is before

18  you is only a valid Texas birth certificate.

19         I asked Ms. Lujan yesterday when she was reviewing

20  the A-File, and you will recall I showed her a letter from

21  Homeland Security and asked if she had found that in the

22  A-File, and she did not.  And the purpose of that was to show

23  that he had used both names and the Federal Government had

24  access to it.

25         I asked her to look at a document showing that

1   Mexican officials had canceled one of the birth certificates,

2   and that also was not in the A-File.  But when she reviewed the

3   A-File, she did find evidence where the client had asserted a

4   U.S. birth certificate.

5           And I think it's fair to say that before they had a

6   baptismal certificate, before they had the delayed birth

7   certificate, his mother's opinion or statement didn't count for

8   anything to anybody in the family, and they understood that.

9           They said, my mother said I'm born -- I think

10  Mr. Stevenson testified that when he interviewed him in

11  Louisiana, the mother said he was born in U.S., but we don't

12  care, we don't believe you, and off you go.

13          The case is specific to October the 27th and his

14  actions that he did on that day.  And I also thought it was

15  interesting that neither Ms. Lujan nor the agent at primary

16  interviewed the mom.

17          Mr. Aguirre doesn't go through the river.  He doesn't

18  cut upstream like everybody knows everybody does.  If he found

19  his way in the U.S., he would have had that birth certificate,

20  got a job, didn't get caught.  He didn't do that.  He drove

21  boldly up into primary and presented.

22          And when you look at it and review it and go over it

23  and turn it upside down, the evidence before you is that it's a

24  valid birth certificate, which gives you the right to enter

25  this country.  You have a constitutional right when you are a

1    citizen of this country to enter it.  And that's the

2    difference.

3        I'm going to ask you -- and I trust that people that

4    have the strength of character or care about their duties as a

5    citizen will take their oath seriously and follow the law and

6    render a true verdict in this case.

7        And the Judge has already instructed you already that

8    your verdict must be based on the legally admissible evidence

9    and testimony, not what you would have done, not what you would

10   have done in your family, not what you hope gets done in the

11   future.  You have to look at squarely what is before you, and I

12   trust each of you will do that.

13       Sometimes juries say, well, you know, we see her

14   point on that.  We see Mr. Miller's point on that.  So we give

15   her one.  We don't do that.  Don't do that.  Don't do that.  On

16   each count on this indictment, Defendant's Exhibit 1 squarely

17   addresses it.

18       On the false claim, which is Count One, one of the

19   elements that the Defendant was not a citizen of the United

20   States at that time, October 27th, and that he knew he was not

21   a citizen.

22       And I elicited from several of the witnesses, almost

23   all of them, almost every person in the world knows where we

24   were born because they told us or we later are presented with a

25   birth certificate or we -- we all rely on what we were told.

1  We can't remember.

2       Count Two, the Government has to prove beyond a

3  reasonable doubt that he was an alien at the time it was

4  alleged in the indictment.  And Lord knows he's been deported,

5  and Lord knows his position is -- their position is he should

6  be deported and he should not be a citizen.  But the evidence

7  is contrary to that.  And as the Judge already said to you, you

8  are instructed that a person born in the United States of

9  America is a United States citizen.

10       If this were before 1836, when Texas was not part of

11  the Union, then you can throw away that Defendant's Exhibit 1.

12  But after we joined the Union, no matter federal regulations

13  cover us and lots of aspects in our life, it doesn't take away

14  the State or the County's ability to make findings for people

15  along this border.

16       I think Mr. Prewit, Ms. Lujan, I know Officer Franco,

17  all of them acknowledge the delayed birth certificate.  It is

18  not -- most of us don't do it, but it is a procedure for

19  exactly this reason, that a lot of poor people in rural

20  communities did not do the hospital way or county clerk way.

21       If you apply the law as given to you, the facts in

22  this case, if you review every document and go over every piece

23  of evidence, no matter how confusing some of it was, the only

24  correct verdict, the only true and just verdict in this case is

25  not guilty on Count One and not guilty on Count Two.

 1                    Thank you very much.

 2             THE COURT:  Mr. Miller?

 3             MR. MILLER:  Your Honor, could I have a sidebar?

 4             (Bench Conference on the record)

 5             MR. MILLER:  I forgot to bring it -- you asked

 6    Maricela yesterday if that document about the other one being

 7    canceled --

 8             THE COURT:  They can't hear you.  I can't hear you.

 9             MR. MILLER:  I'm sorry.  When she asked Maricela if

10    there was a document in the A-File, and she showed you a copy,

11    then we did find it in the A-File.  And I forgot to bring it to

12    Liz's attention.  And when she argued it, it dawned on me, I

13    forgot to bring it to her attention.  We did have it in the

14    A-File after digging through it.

15             MS. ROGERS:  The canceling letter, the Mexican

16    document?

17             MR. MILLER:  The letter that said it was canceled.

18             THE COURT:  Okay.  This is a letter that they --

19             MS. ROGERS:  I had -- we had a document with -- the

20    family evidently had gone to Mexico and gotten a ruling or some

21    kind of documents said when there is two birth certificates

22    this last one is canceled.

23             THE COURT:  Do you want to introduce it now?  Or I

24    will introduce it as the Court's exhibit and say it was found,

25    we did find it in the file.  Do you want to do that?

1        MS. HARRIS:  That's fine.

2        MS. ROGERS:  That's fine.

3        THE COURT:  Can you give get me the document?

4        MR. MILLER:  Uh-huh.

5        MS. ROGERS:  Thank you.

6        (End of Bench Conference)

7        THE COURT:  Back on the record.

8        Why don't we make this as a Court's exhibit?  Or do

9   you want to make it Defendant's exhibit?

10        MS. ROGERS:  I don't have any preference, but it's in

11   the record as Defendant's Exhibit 2.

12        THE COURT:  Okay.

13        MS. ROGERS:  Because I showed it to her.

14        THE COURT:  All right.  Let's make it Defendant's

15   Exhibit 2.  And we will substitute a copy for the original so

16   the Government can have the original back.

17        MS. ROGERS:  Thank you.

18        THE COURT:  You bet.

19        Let me -- ladies and gentlemen, yesterday Ms. Rogers

20   requested Ms. Lujan whether or not there was a particular

21   record in the A-File, which is a pretty voluminous file.  And

22   the testimony is, as I recall, that she didn't believe it was.

23   She took a look, but didn't believe it was.

24        They did find the record yesterday afternoon, and it

25   was marked as Defendant's Exhibit 2, the copy that Ms. Rogers

1    had.  But I didn't let it come in because it wasn't part of the

2    A-File.  So the Government has found that record, and that

3    record has been marked as Defendant's Exhibit 2.

4            And as I recall, that this is a record -- and the

5    second page of it is the interpretation in English of that

6    record -- is that two of the copies of birth certificates of

7    Mr. Jose Aguirre-Estrada, one registered in 1978 and the other

8    in 1987, the second -- that would be the 1987 birth

9    certificate -- has now been canceled since he had previously

10   been registered in the 1978 birth certificate.

11           MS. ROGERS:  That's correct.

12           THE COURT:  Is that correct, Ms. Rogers?

13           MS. ROGERS:  We will move its admission at this time.

14           THE COURT:  And, Ms. Rogers, I will grant you

15   additional time if you want to make any argument about -- or

16   anything you want to tell the jury about the significance of

17   these documents, I grant you time.

18           MS. ROGERS:  They can review it, what it says.  Thank

19   you.

20           THE COURT:  And, Mr. Miller, any objection to

21   Defendant's Exhibit 2?

22           MR. MILLER:  No.

23           THE COURT:  Defendant's Exhibit 2 is admitted.

24               (Defendant's Exhibit No. 2 received)

25           THE COURT:  This is the original, Mrs. LaForge.  And

1    what I would like to do is substitute a copy of this so the
2    Government can have its original back in its file.
3            All right.  Mr. Miller, you are recognized for the
4    remainder of your closing argument.
5            MR. MILLER:  Thank you, Your Honor.
6            (Pause)
7            MR. MILLER:  Your Honor, I needed that exhibit.  I'll
8    proceed.
9            THE COURT:  Okay.
10           MR. MILLER:  Folks, if you look at the instructions,
11   reasonable doubt doesn't mean beyond all doubt.  It's
12   reasonable doubt.  Reasonable doubt is common sense, using your
13   common sense.
14           Back in 1987, when this defendant applied for
15   immigration visa, in the document there says the reason why the
16   1987 document is canceled is because it is a repeat.  It is not
17   that the information on the second 1987 birth certificate is
18   false.  It's because, "Hey, you've already registered in '78,
19   so why are you reregistering in '87?"  But it's the act of
20   reregistering him in '87, one month before he submitted his
21   immigration visa, mom knew at that time that, "Why are you
22   applying for immigration visa?  You are a United States
23   citizen.  You don't need to go through all that paperwork."
24           Let's look at the first deportation.
25           (Pause)

 1              THE COURT:  Mr. Miller, do you want Defendant's

 2    Exhibit 2?

 3              MR. MILLER:  Yes.

 4              (Pause)

 5              THE COURT:  Mr. Miller, you may have knocked the cord

 6    out.

 7              MR. MILLER:  Yeah.  I don't need that anymore.  Thank

 8    you, Your Honor.

 9              (Pause)

10              MR. MILLER:  Sorry about that, folks.  Government

11    Exhibit 8, the first deportation, the Defendant wrote down he

12    resided at 4550 Spartan Drive in Odessa.  He's in the process

13    of being deported.

14              Page 2 of the document, he says Salvador Estrada,

15    4550 Spartan Drive, Odessa, Texas.

16              You heard dad testify, "I was living with my wife

17    Socorro at 4550 Spartan Drive in Odessa.  That's my address."

18              Mom knew he was getting deported, didn't say

19    anything, "Why are you being deported?  You are a United States

20    citizen."

21              MS. ROGERS:  Your Honor, excuse me for interrupting,

22    but I think that argument, that's outside the record.  And I

23    object to the suggestion she knew.  There is no evidence of

24    that.

25              THE COURT:  Well, the Government -- the jury should

 1   only remember that testimony that was actually admitted into

 2   the case.

 3          And counsel is advised not to add anything.

 4          MR. MILLER:  Government Exhibit 14, the Defendant's

 5   mother applies for and receives a visa.  So now she's in the

 6   system, and she's aware, hey, who to deal with in immigration.

 7   She knows the contacts now.  So there is really no ifs, ands,

 8   buts in her mind how to deal with the system.

 9          And then four months later, her son gets deported a

10   second time, then a third time, and then a fourth time.  At no

11   time did the Defendant or anyone on his behalf say, "Hey, he

12   was born in the United States."

13          Mom testified, and she was asked, "Do you remember

14   testifying six and a half years ago in Louisiana?"  And her

15   story slightly changed.

16          Asked mom about how many kids she has.  She rattled

17   off nine kids.  And in her application she only talks about

18   seven.  Granted, one of her children, Lupito, passed away.  She

19   is still missing a child.

20          Asked where they were born, she said they were all

21   born in Mexico except her oldest son, Emilio.  And now she

22   claims the Defendant and their youngest daughter, Socorro, the

23   very youngest.

24          You heard Ms. Pliego testify yesterday.  Does she

25   really remember?  She said she was a young lady and she was --

1    she said her bathing suit was off.

2           Ladies and gentlemen, I would submit to you, she said

3    she was born in 1927.  And in 1964, that would have made her 32

4    years old.  I would submit to you folks that the evidence is

5    maybe it was about ten years earlier when she was about 22 that

6    she was at the Indian Hot Springs hanging out with her friends,

7    and ten years earlier, guess who was born?  Emilio.

8           And what did mom state on her application?  He was

9    born in Hot Springs.  That's the only person she stated in her

10   application under oath in January of '92.  That is the only

11   child that was born in Hot Springs.

12          You heard Officer Agure.  He talked about the birth

13   certificate.  The birth certificate, the piece of paper, is

14   valid.  It was issued by Brewster County.  There is no -- no

15   ifs, ands, buts about it.  The question is, is the information

16   on it valid.  How is that any different if I get information

17   and I put -- I go to the Department of Public Safety and get a

18   driver's license in the name of Robert Junell and I go walking

19   around using it?  That doesn't make me Robert Junell, the

20   Judge.  It doesn't.

21          The driver's license, the paper it's on is a valid

22   driver's license, but the information on it doesn't make me

23   Robert Junell.  And that is what it comes down to.

24          The Defendant is deported four times, convicted at

25   least once.

1          And after that conviction, what does mom do?  She

2    goes -- goes to the Catholic Church, says, "Hey, I need a

3    delayed birth certificate."  Well, they take her word that she

4    baptized her son 40 years earlier, on September 27th.  But

5    Father Sanchez, when he looked at those books, there was no --

6    no registry on September 27th, 1964, that a child named Jose

7    Lopez Aguirre was baptized.

8          They apply for -- they applied to the State, Hudspeth

9    County, for a birth certificate.  No go.  So they go down to

10   Brewster County.  They slide under the radar.

11         MS. ROGERS:  Your Honor, I'm sorry, that's improper

12   argument.  There is no indication they slid under the radar in

13   any aspect in this case.  I object.

14         THE COURT:  The jury will confine its decision based

15   on the evidence introduced into evidence.  And the prosecutor

16   will confine his arguments and the reasonable inferences of the

17   evidence introduced into evidence.

18         MR. MILLER:  You'd get the birth certificate, write

19   to the Attorney General or Department of Homeland Security

20   saying, "Hey, listen, folks, I shouldn't have been deported,

21   and here is the reason why.  I'm a United States citizen.  Here

22   is my documentation."

23         Did the Defendant do this in this case?  No.  What

24   did he do?  On October 27th, a little bit over a year after

25   being deported for the fourth time, he just happens to come

 1   across the port of entry in Presidio during a lunch hour,

 2   during a shift change, and was asked basic questions, "Are you

 3   a United States citizen?"  He presented this delayed birth

 4   certificate the first time in general public, held himself out

 5   as Jose Lopez Aguirre.

 6          If you look at the photos, he's also changed his

 7   appearance to a degree.

 8          When asked questions, he didn't look Officer Agure in

 9   the eye.  He kept looking forward.  "I hope this delay -- if

10   this delayed birth certificate gets me by, I'm home free back

11   in the United States under a different name."

12          And when asked for any other identification --

13   because Officer Agure says, "Hey, I deal with this all the

14   time.  One, the card looked pretty pristine.  Two, I was a

15   little suspicious because the gentleman I saw, the Defendant,

16   was much older than the date this card was issued and applied

17   for.

18          And he also -- Officer Agure says in his type of

19   words, he goes, "Hey, you may have valid paperwork, but the

20   information on it may not be correct or you may be using

21   somebody else's birth certificate."

22          Ladies and gentlemen, use your common sense, and I

23   believe you will, because both sides picked you as the jury.

24          The evidence shows in this case that the Defendant is

25   guilty beyond a reasonable doubt of both charges and a just and

1    righteous verdict is guilt as to both counts.

2            Thank you, folks.

3            THE COURT:  Ladies and gentlemen, if you would go

4    back to your jury charge now on page 10, the bottom of page 10,

5    "Duty to Deliberate."

6            "Duty to Deliberate.

7            "To reach a verdict, whether it is guilty or not

8    guilty, all of you must agree.  Your verdict must be unanimous

9    on each of the two counts of the indictment.  Your

10   deliberations will be secret.  You will never have to explain

11   your verdict to anyone.

12           "It is your duty to consult with one another and to

13   deliberate in an effort to reach an agreement if you can do so.

14   Each of you must decide the case for yourself, but only after

15   an impartial consideration of the evidence with your fellow

16   jurors.  During your deliberations, do not hesitate to

17   reexamine your own opinions and change your mind if convinced

18   that you were wrong.  But do not give up your honest beliefs as

19   to the weight or effect of the evidence solely because of the

20   opinion of your fellow jurors, or for the mere purpose of

21   returning a verdict.

22           "Remember, at all times, you are the judges -- judges

23   of the facts.  Your duty is to decide whether the Government

24   has proved the Defendant guilty beyond a reasonable doubt.

25           "When you go to the jury room, the first thing that

 1    you should do is select one of your number as your foreperson,

 2    who will help to guide your deliberations and will speak for

 3    you here in the courtroom.

 4        "Verdict Form.

 5        "A form of verdict has been prepared for your

 6    convenience.

 7        "The foreperson will write the unanimous answer of

 8    the jury in the space provided for each count of the

 9    indictment, either guilty or not guilty.  At the conclusion of

10    your deliberations, the foreperson should date and sign the

11    verdict.

12        "If you need to communicate with me during your

13    deliberations, the foreperson should write the message and give

14    it to the Courtroom Security Officer.  I will either reply in

15    writing or bring you back into court to answer your message."

16        If you have a note, more words is better than less

17    words.  Sometimes I get, you know, one word and a question

18    mark, and I send it back with, "Exactly what is it you mean?"

19    Also, extra credit for neat handwriting and printing is

20    especially appreciated.

21        "Bear in mind that you are never to reveal to any

22    person, not even to the Court, how the jury stands, numerically

23    or otherwise, on either count of the indictment, until after

24    you have reached a unanimous verdict."

25        And you do have a verdict on each count to fill the

1   unanimous verdict.  And you also have some note forms to send
2   me a note.
3           We are going to move you from this jury room, because
4   we are going to start a new trial at 1:00.  We are going to
5   move you down to the jury room down the hallway.
6           Mr. Villalobos will move you through to the jury
7   room.  Pick up purses, jackets, anything you may have left
8   there.  And you will follow him down the hallway, and we will
9   put you in another jury room.
10          One of the first things we are going to do and -- if
11  Mr. Benavides is listening to me downstairs -- is allow you to
12  order lunch.  And we'll have a menu, and we'll order lunch and
13  then bring it up here for you so you can have lunch in the jury
14  room.
15          We're now going to lose our two alternates.  They
16  have been very faithful.  Mr. Hernandez and Ms. Grubb have been
17  faithful jurors, but you don't get to go deliberate on the
18  verdict.
19          Did you leave -- Mr. Hernandez or Ms. Grubb, did you
20  leave anything in the jury room at all?
21          Ms. Grubb, did you?  Would you get it right now and
22  come back and have a seat on that bench, and I have some
23  instructions for the two of y'all.  So if you would get that.
24          Mr. Hernandez, did you leave anything in there?
25          JUROR HERNANDEZ:  No, sir.

1                THE COURT:  All right.

2                (Pause)

3                THE COURT:  And there will be a Courtroom Security

4    Officer down the hallway.

5                Mr. Hernandez, would you and Ms. Grubb mind sitting

6    right over there on that bench so we can let these jurors go

7    through?

8                And, Mr. Villalobos, if you would take the jurors.

9    Let them pick up their matters here and take them to the other

10   jury room.

11               Let's all rise for the jury as they begin their

12   deliberations.

13               (Jury out at 11:20)

14               THE COURT:  And if you would just take them with you,

15   and then I'll take care of these two jurors right here.  Good.

16               Ms. Grubb and Mr. Hernandez, thank you so much for

17   your service.  If you would leave your notepads, we will shred

18   your notes.  You are welcome to keep a copy of the jury charge

19   if you would like to have one or like to keep it here.  Just

20   leave your pads, and we will take care of your notes and shred

21   your notes.

22               You are now -- you are going to be discharged from

23   the instructions I gave you about not talking about the case.

24   But I would request that you not do that until after 5:00 this

25   afternoon.  Give the jury time to return a verdict.

 1            And then you are entitled -- you can talk about the

 2   case or not talk about the case.  That is entirely up to you

 3   whether you wish to do that or not.

 4            So with that, you are discharged.  And we appreciate

 5   your service very, very much, all right?

 6            JUROR GRUBB:  Thank you.

 7            THE COURT:  Thank you.  Y'all are excused.

 8            All right.  This Court will stand in recess pending

 9   receipt of a note or a verdict from the jury.

10            I want to thank the attorneys for their advocacy in a

11   very difficult case for everyone.  And I appreciate your

12   courtesy toward one another.

13            I appreciate the Government revealing to the defense

14   you had found that document.  I know there's been a lot of

15   things on your mind, and so I appreciate you finding that and

16   letting the -- disclosing that to the Defendants, and your

17   courtesy to the Court as well.

18            And we will be in recess in this case pending receipt

19   of a note or a verdict from the jury.

20            All right.  Thank you.

21            (Recess)

22            THE COURT:  All right.  Please be seated.

23            It's -- we're not quite ready.  Just a second.

24   That's good.  That's good.

25            It's 12:30.  I have received a note from the jury

1    that they have reached a verdict.

2              Let's bring the jury in.

3              (Jury in)

4              THE COURT:  Mr. Barclay, can I get you to stand?

5    Thank you.

6              (Pause)

7              THE COURT:  All right.  Let's be seated.

8              It's 12:30.  The jury is present.  I did receive a

9    note that they had reached a verdict.

10             Let the record reflect Mr. Miller is here, Ms. Rogers

11   is here, Ms. Harris is here, and Mr. Aguirre is present.

12             Who speaks for the jury?

13             Mr. Love?

14             JUROR LOVE:  Yes, Your Honor.

15             THE COURT:  All right.  And are you the jury

16   foreperson?

17             JUROR LOVE:  That's true.

18             THE COURT:  And has the jury reached a unanimous

19   verdict on both counts of the indictment?

20             JUROR LOVE:  A verdict has been reached on both

21   counts, Your Honor.

22             THE COURT:  All right.  Would you give the verdict

23   form to Mr. Balog, please?

24             Thank you, sir.

25             (Pause)

1          THE COURT:  I'm going to hand the form back to you.
2     And I think I understand what you are trying to say.  Would you
3     write the entire word in there, if you would, please, sir, if
4     that is what your intent was?
5          (Pause)
6          THE COURT:  Mr. Aguirre, would you and Ms. Rogers and
7     Ms. Harris please stand while Mrs. LaForge reads the jury
8     verdict?
9          THE CLERK:  "In the matter of Pecos 05-CR-234, the
10    United States of America versus Jose Aguirre-Estrada."
11         The verdict is as follows:
12         "Count One.
13         "We the jury find that the Defendant is not guilty of
14    the offense charged in Count One of the indictment.
15         "Count Two.
16         "We the jury find that the Defendant is not guilty of
17    the offense charged in Count Two of the indictment."
18         Signed the 21st day of March, 2006, by the jury
19    foreperson.
20         THE COURT:  Mr. Miller, do you desire to have the
21    jury polled?
22         MR. MILLER:  No, Your Honor.
23         THE COURT:  Ms. Rogers, do you desire to have the
24    jury polled?
25         MS. ROGERS:  No, Your Honor.

1          THE COURT:  I ask that it be filed with the papers in

2    this case.

3          Ladies and gentlemen, we appreciate your service so

4    much for being here this week.  What I'm going to ask you to

5    do -- this is a little bit different, because we have our other

6    jury coming in right here.

7          Mr. Balog, if you would take the jury here in just a

8    second this way into my library, and I'm going to meet with you

9    for just a second and then let y'all get on your way.  And we

10   appreciate very, very, very much your service.

11         You are now discharged from the instructions I gave

12   you about talking about the case.  You are free to talk about

13   the case or not talk about the case.  That is entirely up to

14   you, what you would like to do.

15         All right.  Let's all rise.

16         And, Mr. Balog, if you would bring the jury this way.

17         (Jury out)

18         THE COURT:  All right.  Be seated.

19         What do I do with Mr. Aguirre?

20         MR. MILLER:  He has a detainer, Your Honor.

21         THE COURT:  He still has a detainer.

22         Well, Mr. Aguirre, congratulations on the verdict.

23   And there is still a hold on you from INS.  So I'm sure your

24   attorneys will be working on that.

25         Mr. Miller, anything else from the Government?

1          MR. MILLER:  No, Your Honor.

2          THE COURT:  Ms. Rogers, anything else?

3          MS. ROGERS:  No, Your Honor.

4          On the other matter, I gave the correct number to you

5   on -- Shannon has it.  We had the wrong case number.

6          THE COURT:  Because when I looked that one up, it was

7   somebody else, so --

8          MS. ROGERS:  I called Alpine.  I didn't have my file.

9   And I will follow up later.

10          May I be excused?

11          THE COURT:  You may be excused.

12          Mr. Aguirre, you are remanded back because of your

13   immigration hold.

14          Thank you very much.

15          (Jury trial adjourned)

16

17

18

19

20

21

22

23

24

25

1       I, TODD ANDERSON, United States Court Reporter for the

2  United States District Court in and for the Northern District

3  of Texas, Dallas Division, hereby certify that the above and

4  foregoing contains a true and correct transcription of the

5  proceedings in the above entitled and numbered cause.

6       WITNESS MY HAND on this 12th day of January, 2023.

7

8

9
                              /s/Todd Anderson
10                            TODD ANDERSON, RMR, CRR
                              United States Court Reporter
11                            1100 Commerce St., Rm. 1625
                              Dallas, Texas  75242
12                            (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25